IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MYLANN L. OVERALL, | ) | CASE NO. 1:03 CV 2459 |
| | ) | |
| Plaintiff, | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| RADIOSHACK CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

## Introduction

District Judge Kathleen M. O'Malley referred this case to the Magistrate Judge for report and recommendation on defendant RadioShack Corporation's motion for summary judgment.[1]  Plaintiff Mylan Overall opposed the motion,[2] and RadioShack filed a reply.[3]

Overall filed a complaint alleging that RadioShack unlawfully failed or refused to hire him because of his race in violation of Title VII of the Civil Rights Act[4] and Ohio Revised Code Chapter 4112.[5]  Because the elements and legal standards for establishing unlawful

---

[1] ECF # 35.

[2] ECF # 46.

[3] ECF # 50.

[4] ECF # 1, First Cause of Action of the Complaint.  His Second Cause of Action alleges intentional discrimination and seeks compensatory and punitive damages under 42 U.S.C. § 1981a.

[5] ECF # 1, Third Cause of Action of the Complaint.

discrimination are the same under Title VII and Ohio Revised Code Chapter 4112, the Court

need not analyze Overall's federal and state claims separately.[6]

RadioShack's motion for summary judgment presents the following issues for decision:

- To establish a prima facie case of race discrimination based on disparate treatment, a plaintiff must present evidence that he applied for the position at issue.  It is undisputed that Overall completed an application but did not submit it to a store where RadioShack had a manager with hiring authority as he had been advised.  Do these facts defeat his prima facie case?

- To establish a prima facie case of race discrimination based on disparate treatment, a plaintiff must present evidence that he was qualified for the position at issue.  It is undisputed that RadioShack requires a high school diploma or GED for employees over 18 years of age and that Overall is over 18 and without a diploma or GED.   Do these facts defeat his prima facie case?

- A party may not raise a new claim for the first time in an opposition to a motion for summary judgment.  Can Overall's complaint in this case reasonably be read to include a claim of unlawful discrimination based on disparate impact or will its averments support only a claim based on disparate treatment?

- Where a plaintiff seeks to establish a prima facie case of race discrimination based on disparate impact with statistical evidence, he must present statistics comparing the racial composition of those qualified in the labor market versus persons holding the jobs at issue. Here the record contains limited evidence of the racial composition of RadioShack's work force.   Will that limited evidence support a prima facie case of disparate impact?

The Court concludes that Overall failed to make of a prima facie case of disparate

treatment because no dispute exists that he did not meet RadioShack's qualifications for the

---

[6] *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 828 (6th Cir. 2000); *Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609-10 (1991).

job at issue or apply for that job.   Further, the Court concludes that Overall's claim of actionable discrimination based on disparate impact must fail because he raised that claim for the first time in opposing summary judgment and did not present evidence sufficient to establish a prima facie case of such impact.

RadioShack is entitled to judgment as a matter of law on each of the causes of action asserted in the complaint.   The Magistrate Judge, therefore, will recommend the granting of RadioShack's motion.

## Factual Background

1.      **RadioShack and its hiring practices**

RadioShack sells consumer electronics – wireless, electronic products and accessories, and other digital technology products.   RadioShack employs approximately 35,000 persons in nearly 5,200 retail stores nationwide.

During the holiday sales season in October, November, and December of each year, RadioShack hires seasonal employees.[7]   The employees hired during this "golden quarter" are temporary with no expectation of permanent employment.[8]

Although RadioShack staffs each store with one or more managers, the company does not authorize every store manager to hire new employees or to terminate employees on their

---

[7] ECF # 35, Ex. 2 at 12.

[8] *Id.*

own.[9]   Only a limited number of RadioShack employees have such authority.   Hiring decisions must have the approval of the district manager, district sales manager, district personnel development manager and/or specified "hiring managers."[10]   The "hiring managers" must complete a certification program and have the verbal approval of district management.[11] Prospective employees may obtain preliminary application forms from store managers who may direct applicants to either hiring managers or to regularly conducted hiring fairs or open houses.[12]

If the candidate does not meet the minimum qualifications for the position, the application process ends.[13]   RadioShack does not continue the application process with any candidate over 18 years of age who lacks a high school diploma or equivalent because that person lacks the basic qualifications for the job.[14]   According to the United States Census Bureau, 87.9% of non-hispanic whites age 18 or older were high school graduates.[15] Conversely, 78.1% of non-hispanic blacks age 18 or older had graduated from high school.[16]

---

[9] ECF # 35, Ex. 3 at 79; ECF # 35, Ex. 4 at 32-34, 40.

[10] ECF # 35, Ex. 3 at 79-80; ECF # 35, Ex. 4 at 32-34, 40.

[11] ECF # 35, Ex. 4 at 44, 50.

[12] ECF # 35, Ex. 4 at 32, 43, 45.   *See also* ECF # 35, Ex. 4, Exs. B, C thereto; Store Operations Manual at I-28.

[13] ECF # 35, Ex. 4 at 60 and Exs. D, E thereto.

[14] ECF # 35, Ex. 4 at 52, 60-63.   *See also* ECF # 35, Ex. 3 at 27.

[15] ECF # 46, Ex. A.

[16] *Id.*.

-4-

In October 2002, RadioShack had two stores in Elyria, Ohio – one in the Midway Mall and the other at 249-A Midway Boulevard.  Like most RadioShack store managers, Debra "Cricket" Taylor, the manager of the Midway Boulevard Store, had no authority to hire employees in October 2002.[17]  Taylor affirmed RadioShack's hiring procedure in her deposition, testifying that when a person inquires about applying for work with RadioShack, she directs that person to a store staffed by a hiring manager or directs them to a hiring fair or open house.[18]

**2.    Overall attempts to apply for a position at RadioShack's Midway Boulevard store.**

During the week ending October 5, 2002, Mylann L. Overall, age 24, stopped into the Midway Boulevard store to apply for employment because he had seen an ad in the Sunday newspaper and a "help wanted" sign in the store window.[19]  RadioShack's preliminary application forms are tri-fold brochures available in stores.[20]  Among other things, the preliminary application asks a candidate to provide information about his or her other

---

[17] ECF # 35, Ex. 3 at 79.

[18] ECF # 35, Ex. 3 at 73-76.

[19] *Id.* at 92, 94, 101.

[20] ECF # 35, Ex. 4 at 35; ECF #35, Ex. 5 at 102.

-5-

educational background.[21]    Overall picked up the tri-fold application[22] and took the application home with him to complete at a later time.[23]

Overall returned to the Midway Boulevard store and spoke with a RadioShack employee, manager Debra "Cricket" Taylor.    According to Overall's deposition testimony, the exchange between them transpired as follows:

> Q.    [By Ms. Koesel] All right.   Then you say you got your dress slacks on about 10:00 o'clock in the morning on October 7, you went into the store to turn in your application?
>
> A.    [By Overall] Um-hum.
>
> Q.    And who did you talk to?
>
> A.    Cricket Taylor.
>
> Q.    How do you know that was her name?
>
> A.    Because that was on her name tag.
>
> Q.    Full name?
>
> A.    It said Cricket.
>
> Q.    Cricket Taylor?
>
> A.    I don't think it said Taylor, it just had Cricket.
>
> Q.    You handed her the application?
>
> A.    I tried to.

---

[21] ECF # 35, Ex. 4 at 35; ECF # 35, Ex. 1 at ¶3, Ex. B thereto.

[22] *Id.* at 98-100.

[23] *Id.* at 102.

Q.     What happened?

A.     And she like put her – she like reached like she was going to grab it, then she stopped and she said that they weren't hiring.

Q.     She said we are not hiring?

A.     She said we're not hiring at this store.

Q.     We're not hiring at this store?

A.     Um-hum.

Q.     And you're sure of that?

A.     Um-hum.

Q.     What else did she tell you?

A.     She told me that I should take it somewhere else.

Q.     Take it somewhere else?

A.     I guess to another store is what she was saying.

Q.     Did she tell you to take it to another store?

A.     She said take it somewhere else.

Q.     She said somewhere else?

A.     Somewhere else?

Q.     She didn't tell you where?

A.     Not at that point yet, no.  Later on in the conversation, she told me I should take it to the other store that was inside the mall.

Q.     She told you to take it to the other store inside the mall?

A.     Um-hum.

-7-

Q.      Did she say why?

A.      She said that they weren't hiring at the store she was working at.

Q.      Okay.  Did she say anything else?

A.      She just kept telling me over and over, because I kept trying to get her to take my application there.

Q.      Okay.

A.      And she just kept telling me over and over to take it somewhere else, take it somewhere else, we're not hiring here.

Q.      Take it to another RadioShack store?

A.      She kept saying take it somewhere else.  At one point she said take it to another store, but most of the time she just kept saying take it somewhere else.

Q.      And that store was the Midway Mall store?

A.      Yes, that's the closest one to her, yeah.

Q.      And what were you saying when she'd say take it somewhere else?  What was your response to her?

A.      I asked her if – I said why do you have a sign in the window if you're not hiring for this store?

Q.      And what was her response?

A.      And she said that when their company is hiring, they put up a sign and it's for all the stores.[24]

_____

[24] *Id.* at 102-05.  *See also id.* at 130.

Overall conceded that Taylor said nothing to him that made him think she had a problem with him because of his race.[25]

Overall admitted that he did not follow Taylor's instructions – he did not take his application to RadioShack's Midway Mall that day, nor did he ever submit an application.[26] Instead, he called his girlfriend, Valerie Revell, and told her "what happened."[27]

Revell, on her own initiative, walked over to the RadioShack store at 249-A Midway Boulevard and asked Taylor for an application.[28]  After she completed her application, Revell signed it and left it with Ms. Taylor.[29]  Before she left the store, Taylor informed Revell about two upcoming open houses – including the dates, times, and location – as well as which open house would give Revell a better chance of getting a job with RadioShack.[30]  Revell told Overall about the open houses; however, he did not attend any of them.[31]

Overall returned to the 249-A Midway Mall store with his application a second time, but Taylor refused to accept it.[32]  After his second visit on October 11, 2002, Overall made no

---

[25] *Id.* at 113.

[26] *Id.* at 106.

[27] *Id.* at 107.

[28] *Id.* at 114-16.

[29] *Id.* at 98-101.

[30] *Id.* at 99.

[31] ECF # 35, Ex. 5 at 122-26.

[32] *Id.* at 120.

attempt to apply for a position at any other RadioShack store in the Lorain-Elyria area, never attended a RadioShack open house, and never took his application to the Midway Mall store as instructed.[33]

**3.      RadioShack's seasonal hires**

During RadioShack's "golden quarter" of 2002, RadioShack hired three temporary employees for the Midway Boulevard location – Brian Trifiletti, a white, non-hispanic male,[34] Rachel Hutchinson, a white non-hispanic female, and Caleb Gross, a black male.  All three of these employees had either a high school diploma or its equivalent.[35] Each of the employees were hired through the RadioShack hiring process.[36]

<strong>Analysis</strong>

In opposing RadioShack's motion, Overall argues that genuine issues of material fact exist with respect to claims of discrimination based on both disparate treatment and disparate impact.

In *Raytheon Co. v. Hernandez*,[37] the Supreme Court explained the distinction between these two kinds of discrimination claims in the following terms:

---

[33] *Id.*

[34] ECF # 35, Ex. 1 at ¶5.

[35] ECF # 35, Ex. 4 at 63-73, and Exs. G, H, I thereto.

[36] ECF # 35, Ex. 1 at ¶5.

[37] *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003).

This Court has consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact. The Court has said that " '[d]isparate treatment' ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." Liability in a disparate-treatment case "depends on whether the protected trait ... actually motivated the employer's decision."  By contrast, disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  Under a disparate-impact theory of discrimination, "a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case."[38]

RadioShack asserts that it is entitled to judgment as a matter of law on both claims.

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[39]  A fact is "material" only if its resolution will affect the outcome of the lawsuit.[40]  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[41]  The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[42]

---

[38] *Id*. at 52-53 (citations omitted).

[39] Fed. R. Civ. P. 56(c).

[40] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[41] *Id.*

[42] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

-11-

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[43]  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[44] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[45]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[46]  The nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be solved by a jury."[47]  "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[48]

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[49] The court will not consider non-material facts, nor will it weigh material evidence to

---

[43] *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

[44] *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 248-49).

[45] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[46] *Celotex*, 477 U.S. at 324.

[47] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[48] *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 124 Fed.Appx. 329, 331 (6th Cir. 2005).

[49] *Anderson*, 477 U.S. at 248.

-12-

determine the truth of the matter.[50] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[51]

## 1.    Disparate treatment

Courts analyze disparate treatment claims under the burden shifting approach adopted by the Supreme Court in *McDonnell Douglas Corporation v. Green*.[52]  If Overall proves the prima facie case for his claim, RadioShack must then respond by proving a legitimate, nondiscriminatory reason for failing to hire Overall.[53]   If the defendant proffers such a reason, Overall must respond by showing that legitimate reason was merely a pretext for discrimination.   RadioShack did not attempt to demonstrate any legitimate nondiscriminatory reason for their actions – their motion before the Court concentrates solely on the deficiencies in Overall's prima facie case.[54]

The prima facie case for a failure to hire claim consists of four elements.   Overall must prove that

    1.      He is a member of a protected class

    2.      That he applied for and did not receive the job at issue

---

[50]  *Id.* at 249.

[51]  *Id.*

[52]  *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[53]  *Id.*

[54]  ECF # 35.

3.      He was qualified for that job, and

4.      Similarly situated persons not in his class received the job he applied
        for.[55]

If Overall fails to prove one of the four elements of the prima facie case, summary judgment

should be entered for RadioShack.

RadioShack, in its motion for summary judgment, argues that Overall falls short of

establishing elements two and three of the prima facie case for disparate treatment

discrimination.

**2.      Application for the position in question**

If the plaintiff in a Title VII failure to hire case does not apply for the position at issue,

he fails to establish the prima facie case.[56]  Overall testified that he attempted to submit an

application at the 249-A Midway Boulevard store.  He was told to take the application to the

Midway Mall store.[57]

Overall does not dispute that he did not do so.  He also does not dispute that the Midway

Boulevard store does not have a hiring manager, that the Midway Mall store did, and that a

hiring decision could only be made by a hiring manager.

Under Sixth Circuit case law, Overall's conduct constitutes failure to apply.    In

*Williams v. Hevi-Duty Electric Company*,[58] the plaintiff Williams had a convoluted and

---

[55] *Anthony*, 339 F.3d at 514.

[56] *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 629 (6th Cir. 1987).

[57] ECF # 35, Ex. 5 at 120-26.

[58] *Williams*, 819 F.2d 620.

detailed history with the defendant Hevi-Duty.   Williams initially submitted an application to Hevi-Duty and was not hired.   Hevi-Duty did, however, retain the application, and it was kept on file with the company's personnel department for a period of one year.   After three years, Hevi-Duty solicited new applications for employment.   It decided to hire from the new applications received in a very short time period. Williams did not apply during the narrow time frame Hevi-Duty designated for receiving applications and consequently was not considered for the available jobs.

The Sixth Circuit determined that Williams had not applied for the job, and therefore, failed to satisfy the second element of the prima facie case for disparate treatment employment discrimination.[59]   The court held that Hevi-Duty had not attempted to hide the fact that it was accepting new applications for a limited time period; it so advised Tennessee Job Services.[60]   It declined to conclude that Williams had constructively applied for the job by mailing a prior application and by expressing interest in a job.[61]

Overall's situation is comparable to that of Williams.   Overall twice entered the Midway Boulevard RadioShack store and attempted to hand an application to manager Cricket Taylor.[62]   Taylor did not have the authority to hire employees[63] and directed Overall to submit his

---

[59] *Id.* at 629.

[60] *Id.* at 628.

[61] *Id.* at 630.

[62] ECF # 35, Ex. 5 at 106, 120.

[63] ECF # 35, Ex. 3 at 79.

application to the hiring manager at the Midway Mall store.[64]   He admits that no action could take place on his application unless it reached the hiring manager at the Midway Mall store. Overall never submitted an application at any RadioShack store, nor did he attend a RadioShack hiring fair.   His efforts to submit an application at the Midway Boulevard store should not be considered a constructive application.

### 3.        Qualification for the position in question

To satisfy the third element of the prima facie case, the plaintiff must present "credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."[65]   Qualifications for a position are a business decision with which the courts should not interfere.[66]   Courts have recognized education requirements as proper for purposes of disparate treatment prima facie case analysis.[67]

RadioShack requires its employees to have a high school diploma or the equivalent if they are greater than 18 years of age.[68]   Overall, age 24,   admitted in deposition testimony that

---

[64] ECF # 35, Ex. 5 at 102-05.

[65] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

[66] *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 765 (7th Cir. 2001).

[67] *Anthony*, 339 F.3d at 516; *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620-21 (7th Cir. 2001); *Mitani v. IHC Health Serv*s*.,* 53 Fed.Appx. 48, 52 (10th Cir. 2002); *Diaz Diaz v. Crowley Liner Servs., Inc.*, 281 F. Supp. 2d 340, 347 (D.P.R. 2003).

[68] ECF # 35, Ex. 4 at 60-62.

-16-

he did not have a high school diploma or general equivalency degree when he applied for employment with RadioShack.[69]

If RadioShack had hired an employee over the age of 18 who did not meet the high school diploma requirement, proof of such a hire would bypass the third element of the prima facie case.[70]  Overall offers no proof that RadioShack hired anyone over the age of 18 who did not meet the educational requirement.  In fact, the three employees hired for the position Overall wanted at the Midway Boulevard store met that requirement.[71]

Finally, Overall complains because RadioShack did not learn that he lacked a high school diploma or GED until discovery.  The evidence of record, however, is uncontested that had he submitted an application at the Midway Mall store as instructed, RadioShack would not have hired him.  Further, after-acquired evidence can be considered in evaluating the "qualification" element of a prima facie case of disparate treatment.[72]

Overall has failed to prove both the second and third elements of the prima facie case of disparate treatment.  The Court, therefore, should enter summary judgment on that claim.

**4.     Disparate Impact**

As the Supreme Court in *Hernandez* explained in the quotation set out above, disparate impact discrimination involves a facially neutral employment practice that impacts one racial

---

[69] ECF # 35, Ex. 5 at 8.

[70] *Anthony*, 339 F.3d at 515.

[71] ECF # 35, Ex. 4 at 63-67 and Exs. G, H, I thereto.

[72] *Underwood v. Perry County Comm'n*, ___ F.3d ___, 2005 WL 1692892, *3 (11th Cir. 2005).

group more harshly than another.  Overall challenges RadioShack's policy of requiring employees over 18 years of age to have either a high school diploma or a GED.  He concedes that he has neither.  In support of his claim, he cites to U.S. Census statistics for 2002 showing that 87.9% of non-Hispanic whites of both sexes, aged 18 and older, have high school diplomas, whereas only 78.1% of non-Hispanic blacks of both sexes over age 18 do.[73]

In response, RadioShack makes two arguments.  First, it submits that this Court should not consider Overall's disparate impact claim because he first raised it in his opposition to the summary judgment motion.  Second, RadioShack maintains that the statistics presented do not make out a prima facie case of disparate impact discrimination.

### a.    *Failure to plead as a bar to Overall's disparate impact claim*

In *Tucker v. Union of Needletrades, Industrial, and Textile Employees*,[74] the Sixth Circuit made clear that district courts should not entertain claims first raised by plaintiffs in oppositions to summary judgment motions.  There the plaintiff brought a claim under the Labor Management Relations Act for failure to arbitrate a grievance protesting a termination.[75]  In response to a motion for summary judgment, the plaintiff raised for the first time a claim of promissory estoppel.[76]  The district court refused to entertain the new claim and granted

---

[73] ECF # 46, at 6.

[74] *Tucker v. Union of Needletrades, Indus., and Textile Employees*, 407 F.3d 784 (6th Cir. 2005).

[75] Id. at 785-86.

[76] Id. at 788.

summary judgment in favor of the defendant.[77]   On appeal the Sixth Circuit affirmed, concluding that the plaintiff's failure to amend the complaint to assert the new claim barred its consideration on summary judgment.[78]   To do otherwise would subject the defendant to unfair surprise.[79]

The Ninth Circuit applied the same principles relied on by the *Tucker* court to a disparate impact claim in *Coleman v. Quaker Oats Company*.[80]   The plaintiffs in that case pled disparate treatment but not disparate impact.[81]   The court concluded that the differences in the proof required for each of the distinct claims dictated that the defendant would suffer prejudice if required to defend the disparate impact claim after the close of discovery.

> Allowing Jeney, Gentile and Coleman to proceed with their disparate impact theory after the close of discovery would prejudice Quaker. A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations. A disparate impact theory, lacking the requirement that the plaintiff prove intent and focusing on statistical analyses, requires that the defendant develop entirely different defenses, including the job relatedness of the challenged business practice or its business necessity. Neither of these are necessary to defend against a disparate treatment theory.[82]

---

[77] Id. at 787.

[78] *Id*. at 788.

[79] *Id*.

[80] *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000).

[81] *Id*. at 1291.

[82] *Id*. at 1292.

If Overall failed to plead disparate impact in his complaint, and raised the claim for the first time in opposing summary judgment, *Tucker* and *Coleman* dictate that this Court should not consider the merits of that claim.

A careful review of the averments of the complaint reveals that Overall failed to plead a disparate impact claim.  Nowhere in the complaint does Overall challenge the employment practice that he now claims caused the disparate impact – the requirement of a high school diploma or GED.  His first cause of action avers that RadioShack refused the accept his application for employment.  The averments attempt to track the elements for a prima facie case of disparate treatment.[83]  Nothing in that cause of action placed RadioShack on notice that it had to defend a disparate impact, as opposed to a disparate treatment, claim.

Overall's second cause of action specifically avers intentional discrimination[84] and prays for relief under 42 U.S.C. § 1981a.[85]  Disparate impact does not require intentional discrimination,[86] and relief under § 1981a is only available in cases of intentional discrimination.[87]  The second cause, therefore, gives no notice on a disparate impact claim.

Finally, the third cause of action is a claim under Ohio Revised Code Chapter 4112 based on the averments of the first two causes.  The reference to "conscious disregard of

---

[83] ECF # 1, at ¶s 7-12.  *See McDonnell*, 411 U.S. at 802.

[84] ECF # 1, at ¶ 20.

[85] ECF # 1, at ¶ 22.

[86] *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005).

[87] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999).

-20-

rights" and "actual malice" [88] gives notice that the claim rests on intentional discrimination rather than on an employment practice adopted without a deliberately discriminatory motive, the "necessary premise" of a disparate impact claim.[89]

By no later than July 12, 2004, through the deposition of Howard Jefferson, Overall had knowledge of RadioShack's educational requirements.[90]  He did not seek to amend his complaint thereafter.  No mention is made of disparate impact until the opposition to the motion on December 14, 2004.  Under these circumstances, he should be barred from pursuing this claim.

### b.    Analysis of the evidence of a prima facie case of disparate impact

Even if the Court moves beyond Overall's failure to plead the disparate impact claim, RadioShack should receive judgment as a matter of law because he has not made out a prima facie case.  Overall challenges RadioShack's requirement of a high school diploma or a GED for employees over the age of 18.  The evidence presented of the disparate impact of that requirement was national statistics comparing the percentage of blacks and whites over 18 with high school diplomas.  The record contains only a scintilla of evidence about the racial composition of RadioShack's work force.  As explained below, given the paucity of such evidence, Overall cannot establish a prima facie case.

---

[88] ECF # 1, at ¶ 28.

[89] *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988).

[90] ECF # 35, Ex. 4 at 52.

A disparate impact claim attacks employment practices "fair in form but discriminatory in operation."[91]   A plaintiff need not show intentional discrimination but must instead prove that the challenged practice, although neutral on its face, has a significant, adverse effect on the plaintiff's protected group.[92]   As a first step, the plaintiff must make out a prima facie case of discrimination – *i.e.*, that an adverse impact has occurred.[93]   This can be done by statistical proof alone.[94]

The Supreme Court has used various verbal formulations to describe the standards for the statistical proof that will suffice to establish a prima facie case.  All of these formulations, however, indicate that the proof must include evidence of the racial composition of those actually hired by the employer – the employer's work force.  In *Albemarle Paper Co. v. Moody*,[95] the Court described the "prima facie case of discrimination" as including evidence that "the tests in question *select* applicants for hire or promotion in a racial pattern significantly different from the pool of applicants."[96]   By definition those selected are the employees of the defendant.

---

[91] *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).

[92] *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000).

[93] *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005).

[94] *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650 (1989).

[95] *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975).

[96] *Id*. at 425 (emphasis added).

The majority opinion in *Hazelwood School District v. United States*[97] describes the prima facie case for disparate impact as a comparison between the racial composition of the defendant's employees and the racial composition of those qualified in the relevant labor market.[98]  The Court underscored this in *Wards Cove Packing Co., Inc. v. Atonio*:

> It is such a comparison – between the racial composition of the qualified persons in the labor market and the *persons holding at-issue jobs* – that generally forms the proper basis for the initial inquiry in a disparate-impact case. Alternatively, in cases where such labor market statistics will be difficult if not impossible to ascertain, we have recognized that certain other statistics – such as measures indicating the racial composition of "otherwise-qualified applicants" for at-issue jobs – are equally probative for this purpose.[99]

Again, necessarily those holding the at-issue jobs are the defendant's employees.

Cases in which the Supreme Court has passed on the adequacy of evidence submitted to prove the prima facie case of disparate impact illustrate the importance of proof of the composition of the employer's work force.  In *Griggs v. Duke Power Company*[100] the plaintiffs challenged, as does Overall, a requirement of a high school diploma.  The evidence showed that Duke Power, at the facility in question, had 95 employees, including 14 African-Americans.[101]  The company had five operating departments.[102]  All of the African-Americans

---

[97] *Hazelwood School Dist. v. United States*, 433 U.S. 299 (1977).

[98] *Id*. at 308.

[99] *Wards Cove*, 490 U.S. at 650-51 (citations omitted) (emphasis added).

[100] *Griggs*, 401 U.S. 424.

[101] *Id*. at 426.

[102] *Id*. at 427-28.

worked in the department with the lowest paying jobs.[103]   The racial composition of the four departments with the higher paying jobs was 100% Caucasian.   This evidence permitted the comparison later described by the Court in *Wards Cove* and sufficed to make out the prima facie case of disparate impact.

The Court in *Dothard v. Rawlinson* examined the disparate impact on women of Alabama's height and weight requirements for prison guard jobs.    The statistical proof compared the percentage of women in the state's labor force to the percentage of women employed in the positions at issue.[104]   It also analyzed the comparison between the percentage of women in the national labor force excluded by the height and weight requirements and the percentage of men excluded.[105]   The record contained the actual number of persons employed in prison guard positions in the state and the number of women so employed.[106]   The Court concluded that this evidence sufficed to establish the prima facie case of disparate impact.[107]

By contrast, in *Furnco Construction Corp. v. Waters*,[108] the statistical proof regarding current employees of the defendant defeated the plaintiffs' prima facie case.   The plaintiffs challenged Furnco's practice of refusing to hire bricklayers at the job site.   The evidence

---

[103] *Id.*

[104] *Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977).

[105] *Id.* at 329-30.

[106] *Id.* at 327.

[107] *Id.* at 330.

[108] *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978).

showed that 5.7% of the bricklayers in the relevant labor market were minorities.[109]  It also showed, however, that 13.3% of the man-days on the project in question had been worked by black bricklayers.[110]  Because the hiring practice had not resulted in a disproportionately small number of black bricklayers being employed on the project, the Court did not view the case as one presenting a disparate impact claim.[111]

The Supreme Court has cautioned that the statistical evidence necessary to sustain a prima facie case of disparate impact must be reliable and that small or incomplete data sets may not be reliable.[112]  The record here does contain evidence that at the RadioShack store where Overall wanted to work as a seasonal employee, the company hired two whites and one black for those positions.[113]  RadioShack is a national merchandiser with multiple stores in Lorain County and Northeastern Ohio.  The racial composition of seasonal employees at one retail outlet cannot serve as the basis for meaningful disparate impact analysis.  The probative value of that small sample is not significant enough to support a prima facie showing that the educational requirement had an adverse discriminatory impact on blacks.[114]  Inadequate

---

[109] *Id*. at 571.

[110] *Id*. at 572.

[111] *Id*. at 572, 575 n.7.

[112] *Watson*, 487 U.S. at 996-97.

[113] ECF # 35 at 9.

[114] *See, e.g., Stout v. Potter*, 276 F.3d 1118, 1123 (9th Cir. 2002); *Lewis v. Aerospace Comty. Credit Union*, 114 F.3d 745, 750 (8th Cir 1997).

statistical evidence of an employer's work force is fatal to a disparate impact prima facie case.[115]

Even assuming that this very limited information can provide one component for the meaningful comparison required by *Wards Cove*, the other information needed for that comparison is missing. Ideally, the record should contain evidence of the racial composition of RadioShack's "qualified" applicant pool,[116] which it does not. Then that information could be compared with the racial composition of the relevant labor force to determine if the educational requirements might have some impact on the number of blacks being considered for jobs.[117] The record is devoid of any evidence of blacks versus whites in the relevant labor force, be it national or regional. In light of this deficient record, the statistic that approximately 10% fewer blacks than whites over 18 have high school diplomas has no relevance.

The review of the statistical evidence needed to properly evaluate a prima facie case of disparate impact reinforces the conclusion that Overall's failure to raise the claim before the

---

[115] *Fannon v. AAP St. Mary's Corp.*, 124 F.3d 197, 1997 WL 560058, at **3 (6th Cir. 1997) (unpublished table decision).

[116] *Wards Cove*, 490 U.S. at 650-51.

[117] Even assuming that evidence showed that the percentage of blacks in RadioShack's "qualified" applicant pool was less than the percentage of blacks in the relevant labor force to an extent statistically significant, the prima facie case would fail under *Wards Cove* if the percentage of blacks in RadioShack's labor force was not significantly less than the percentage of blacks in the relevant labor force. See the discussion above about the *Furnco* case, 438 U.S. at 571-75. The absence of sufficient statistics regarding the racial composition of those in the "at-issue" jobs is, per se, fatal to Overall's prima facie case.

opposition to RadioShack's motion bars the claim.    As Justice O'Connor observed in *Watson v. Fort Worth Bank & Trust*, even when the plaintiff presents a more complete statistical proof than that offered here, the defendant employer may demonstrate that the proof is unreliable in a variety of ways.[118]    But when the employer has no notice that disparate impact or statistical proofs are part of the case until after the close of discovery, "unfair surprise" inevitably occurs.[119]    Procedurally and on the merits, the Court should enter summary judgment on the disparate impact claim.

### Conclusion and Recommendation

Based on the foregoing analysis, the Magistrate Judge recommends the granting of RadioShack's motion as to all counts of Overall's complaint.


Dated:  August 16, 2005                          s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.    Failure to file objections within the specified time waives the right to appeal the District Court's order.[120]

---

[118] *Watson*, 487 U.S. at 996.

[119] *Tucker*, 407 F.3d at 788.

[120] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).