**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MYLANN OVERALL,** | : | Case No. 1:03CV2459 |
| | : | |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| **RADIOSHACK CORPORATION,** | : | <u>MEMORANDUM AND ORDER</u> |
| | : | |
| Defendant. | : | |

On December 2, 2003, plaintiff, Mylann L. Overall ("Overall" or "Plaintiff"), filed a complaint against defendant, RadioShack Corporation ("RadioShack" or "Defendant"), alleging that RadioShack unlawfully failed, or refused, to hire him because of his race. Specifically, Overall alleged that RadioShack discriminated against him in violation of 42 U.S.C. § 2000(e) *et. seq.*; that RadioShack engaged in unlawful intentional discrimination against him in violation of 42 U.S.C. § 2000e-2 ("Title VII"), for which recovery may be sought pursuant to 42 U.S.C. § 1981; and that RadioShack, by virtue of the same acts, also violated R.C. § 4112.02(A).

On October 21, 2004, Defendant RadioShack filed a Motion for Summary Judgment on all counts

1

of Plaintiff's Complaint. According to Local Rule 72.2(b), this case was sent to Magistrate Judge William Baughman, Jr. for a Report and Recommendation ("R&R"), who, in a thorough and carefully written opinion, concluded that Defendant's Motion for Summary Judgment should be granted.

The Magistrate Judge determined that Overall failed to make a prima facie case of disparate treatment and that Overall's claim of disparate impact must fail because he failed to allege that claim in the Complaint, having proffered it for the first time in his opposition brief to Defendant's Motion for Summary Judgment. The Magistrate Judge further stated that, even if his disparate impact claim were allowed, Plaintiff failed to prove a prima facie case of disparate impact because the record contained only a "scintilla of evidence about the racial composition of RadioShack's work force." (R&R at 2-3.) Plaintiff thereafter filed a timely objection to the Magistrate Judge's R&R, and the Defendant filed a response.

Currently before this Court is the Magistrate Judge's R&R, along with Plaintiff's objections and Defendant's responses thereto. For the reasons more fully discussed below, this Court adopts the Magistrate Judge's recommendation and hereby **GRANTS** Defendant's Motion for Summary Judgment as to all counts.

In addition, Plaintiffs also filed a Request for Judicial Notice of certain March, 2002 census figures (Doc. 45). As noted in footnote 5 of this memorandum and order, that request is also **GRANTED**.

I.   **FACTUAL BACKGROUND**

RadioShack sells consumer electronics and employs approximately 35,000 persons in nearly 5,200 retail stores nationwide. Although the company staffs each of its stores with a manager, the company does not authorize every store manager to hire new employees. Prospective employees, however, may obtain

preliminary application forms from store managers who then direct applicants either to hiring managers, or to regularly conducted RadioShack hiring fairs or open houses. In October 2002, RadioShack had two stores in Elyria, Ohio - one designated as the Midway Mall store and the other at 249-A Midway Boulevard, which was also in the Midway Mall.

Plaintiff Mylann Overall obtained a preliminary employment application brochure from the Midway Boulevard store during the week ending October 5, 2002. He took the application home with him to complete at a later time. Upon completion of the preliminary application, Overall returned to the Midway Boulevard store and spoke with a RadioShack employee, store manager Debra "Cricket" Taylor ("Taylor"). Overall attempted to hand the application to Taylor, but she stopped short of taking it and said that they weren't hiring at the Midway Boulevard store. After Overall asked why there was a "now hiring" sign in the window of that store, Taylor explained to Overall that RadioShack places "now hiring" signs in all stores when the company at large is hiring. Taylor then instructed Overall to deliver the application to the Midway Mall store. It is undisputed that Taylor had no managerial authority to hire any prospective employee during October 2002. According to the deposition testimony of a RadioShack personnel officer, Howard Jefferson, store managers without hiring authority, such as Taylor, were authorized to direct a prospective employee to take their preliminary application to a store staffed with a Hiring Manager.[1] Overall conceded that Taylor said nothing to him that made him think she had a problem with him because

---

[1] Jefferson's testimony, however, also indicates that store managers without hiring authority were not authorized to refuse to accept a preliminary application from a prospective employee, if the prospective employee truly wished to submit an application to that location, and did not wish to go elsewhere. Obviously, Taylor's actions toward Overall, at least on his second visit, violated this aspect of RadioShack's policy.

of his race.

Overall admitted that he did not follow Taylor's instruction to take his application to the Midway Mall store that day, nor did he ever submit an application to RadioShack. Later that same day, Valerie Revell, who was Overall's white girlfriend at the time, requested from Taylor an employment application. Ms. Revell left the completed application with Taylor, who informed her about two upcoming open houses - including the dates, times and location - and told her which open house would give Revell a better chance of getting a job with RadioShack. Revell told Overall about the open houses, but he did not attend any of them.

On October 11, 2002, Overall returned a second time to the Midway Boulevard store with his application, but once again Taylor refused to accept it. Thereafter, Overall made no further attempt to apply for a position at any RadioShack store, did not attend any RadioShack open house, and did not take his application to the Midway Mall store as instructed.

During the months of October, November, and December, which RadioShack terms its "Golden Quarter" of sales, RadioShack stores hire only temporary employees. In 2002, three temporary employees were hired by RadioShack and placed at the Midway Boulevard store- Brian Trifiletti, a white, non-Hispanic male; Rachel Huskinson, a white, non-Hispanic female; and Caleb Gross, a black male. All three employees had either a high school diploma or its equivalent.

## II. **STANDARD OF REVIEW**

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 154 (1970); *see also White v. Turfway Park Racing Ass'n, Inc.*,

909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Id.* at 255. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party necessarily will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record, as it has been established, which create a genuine issue of material fact. *See Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. ANALYSIS

Plaintiff advances two distinct claims of discrimination in his opposition brief to Defendant's Motion for Summary Judgment.[2] Overall first maintains that RadioShack's failure to hire him constitutes "disparate treatment." Overall also asserts a claim that to the extent RadioShack required new hires for the position

---

[2] Because the elements of and legal standards governing unlawful discrimination claims are the same under Title VII and O.R.C. 4112.02(A), the court need not analyze those claims separately.

5

of sales associate to have a high school diploma or its equivalent, that hiring policy had a "disparate impact" upon himself and other black applicants. In *Raytheon Co. v. Hernandez*, the Supreme Court of the United States explained the distinction between these two kinds of discrimination claims in the following terms:

> The Court has said that '[d]isparate treatment'...is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]....By contrast, disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."

540 U.S. 44, 52-53 (2003) (citations omitted).

### A.     **Disparate Treatment**

A claim of disparate treatment requires the plaintiff to prove a discriminatory animus on the part of the defendant. *See Watson v. Forth Worth Bank & Trust*, 487 U.S. 977, 986 (1988). In the employment context, disparate treatment requires a showing that a prospective employee was intentionally treated less favorably than others simply on account of his race, color, religion, sex or national origin. *Watson*, 487 U.S. at 985-86.

When reviewing claims of disparate treatment under Title VII, courts have used the *McDonell Douglas/Burdine* framework when a plaintiff cannot provide evidence of direct discrimination by the employer. Under this framework, the plaintiff must carry the initial burden of establishing a prima facie case of discrimination by showing that: [1] he is a member of the protected class; [2] he applied for and did not receive the job at issue; [3] he was qualified for the job; and [4] similarly situated persons not in his class received the job for which he applied. *See Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). RadioShack contends that it

is entitled to summary judgment on Overall's disparate treatment claim because Overall has failed to prove two of the above elements. Specifically, RadioShack argues that Overall failed to apply for the position as required because he never submitted a formal application. RadioShack also asserts that Overall was not qualified for the position of sales associate because he lacked a high school diploma or its equivalent.

Defendant first argues that Overall failed to apply for the position because he failed to follow Taylor's directive to "take the application to the Midway Mall store." In his opposition brief, Overall contends that his two efforts to deliver the application to the Midway Boulevard store constitute "attempt[s] to apply for the position of a sales associate." Plaintiff avers that he attempted to give his application to Taylor but that she refused to take it.

The Magistrate Judge concluded that Overall's conduct constitutes failure to apply. (R&R at 14.) In reaching that conclusion, the Magistrate Judge relied on *Williams v. Hevi-Duty Electric Co.*, where the Sixth Circuit held that an applicant does not constructively apply for a job by the mere expression of interest in the job or by mailing prior applications. 819 F.2d 620, 630 (6th Cir. 1987). In that case, the defendant company kept the plaintiff's application on file for one year. Three years later, the company openly solicited employment applications, for which the plaintiff did not submit a new application. *Id.* at 628. In concluding that the plaintiff had failed to satisfy the second element of a prima facie case for disparate treatment, the Court found the crucial fact to be that "[plaintiff's] application was not rejected; it simply was not timely filed." *Id.* at 629.

The Magistrate Judge found Overall's situation to be comparable to that of the plaintiff in *Williams*. Although this Court agrees with the Magistrate Judge's conclusion that Overall did not actually apply for a sales associate position with RadioShack, it does not completely agree with the Magistrate Judge's

7

reasoning. The Court finds the *Williams* case upon which the Magistrate Judge relies distinguishable from the current facts. In *Williams*, the situation involved consideration for employment on a "rolling" basis, while the facts here concern a one-time meeting between an off-the-street prospective employee and the employer. While no impediments to applying for the position were thrown in the way of the plaintiff in *Williams* (rather, he simply failed to re-apply for a position), here Overall tried to apply, but met with some resistance in his attempts, unlike Revell.

In this case, Plaintiff contends that Taylor was arbitrarily accepting applications based on the race of the applicants. (R&R at 3.) Envisioning a line of both white and black applicants, Plaintiff argues that Taylor effectively would screen black employees from submitting applications at the Midway Boulevard store by refusing to accept applications from the black applicants while accepting applications from the white applicants. Plaintiff also asserts that Taylor gave useful advice to Ms. Revell regarding upcoming open houses and job fairs, but that Taylor did not offer the same advice to him.

While the Court does not condone the practice of accepting some applications and not others, Plaintiff has still failed to address the undisputed fact that Taylor had no managerial authority to hire anyone. Although Taylor may have violated company policy by refusing to accept Overall's preliminary application, and her conduct may be unacceptable generally, the fact remains that she did advise Overall that he could take his application to an alternative location where a hiring manager was located. And, Taylor correctly told Overall that she had no hiring authority. Ultimately, it was Overall's choice not to follow Taylor's advice, which leaves the Court with the critical fact that Overall did <u>not</u> file any application for employment with RadioShack. Although Plaintiff may have been inconvenienced by having to go to another store, a short distance away, he was not <u>prevented</u> from filing his application. Plaintiff, therefore, did not actually

apply for the sales associate position.

The Magistrate Judge also determined that Overall did not constructively apply for the position by virtue of his efforts to submit the application at the Midway Boulevard store. In *Wagner v. G.A. Gray Co.*, the Sixth Circuit held that, when an employee and an employer are "strangers," the employee must formally apply for the position in question before claiming employment discrimination. 872 F.2d 142, 146 (citing *Payne v. Bobbie Brooks, Inc.*, 505 F. Supp. 707, 716-17 (N.D. Ohio 1980), *aff'd*, 701 F.2d 180 (6th Cir.), *cert. denied*, 459 U.S. 858 (1982)). Only by a showing of employer awareness[3] or that the application would be futile can the plaintiff establish the functional equivalent of an actual, formal application and vitiate this usual requirement. *Payne,* 505 F. Supp. at 716-17. Neither of these exceptions, however, are applicable on the current facts. Overall never spoke with a Hiring Manager at RadioShack. Rather, the only RadioShack employee with whom Overall had contact was Taylor, who had no hiring authority and told him so. Plaintiff, therefore, has not shown employer awareness of his interest in employment.

It is also true that Taylor did not convey to Overall that applying at the Midway Mall store would be futile. Instead, she advised him to deliver his application there, and told him that a person with the authority to consider it could be found there. The facts do not establish, therefore, that Overall was given the impression that his application would be futile. Viewing the facts in the light most favorable to the Plaintiff, Overall's conduct did not constitute constructive application for the position. Overall, therefore, has not shown that he applied for the position, thus failing to meet this crucial element of his disparate

---

[3] In certain circumstances, if a plaintiff can show that an employer was aware of his "continuing desire to be considered for employment..., this showing could constitute the functional equivalent of an application." *Hansbury v. Regents of Univ. of Cal.*, 596 F.2d 944, 949 (10th Cir. 1979).

treatment claim.[4]

Second, RadioShack contends that Overall failed to meet the qualifications for a sales associate position because he did not possess a high school diploma or its equivalent - a purported requirement of all RadioShack employees 18 years or older. Overall responds that he was qualified for the sales associate position, according to the qualifications posted on RadioShack's website: (1) "[a] strong desire to excel and be compensated on performance"; (2) "[e]xcellent interpersonal and communication skills"; and (3) the "[a]bility to work 36 to 40 hours per week or less than 30 hours for part-time."

The Magistrate Judge concluded, relying on the deposition testimony of Howard Jefferson, that RadioShack requires employees over the age of 18 to possess a high school diploma or its equivalent. (R&R at 16.) The Magistrate Judge pointed out that Jefferson's deposition testimony is buttressed by the fact that RadioShack hired three (3) people for the Midway Boulevard store in October 2002 - Brian Trifiletti, Rachel Huskinson, and Caleb Gross - who all possessed diplomas or GEDs. *Id.* at 17. The Magistrate Judge decided that Overall was not qualified for the position because he lacked a high school diploma or GED. *Id.* Plaintiff objects to that finding, disputing that this was a true requirement for the position of sales associate.

After a review of the record, the Court does not agree with the Magistrate Judge's decision and finds a genuine issue of material fact exists regarding the qualifications RadioShack requires for a sales associate position. There is sufficient evidence contradicting Jefferson's testimony on this issue, including

---

[4]While neither the Magistrate Judge nor the parties addressed the point, if, as Overall suggests, Taylor personally favored Revell over Overall, there is no evidence in the record that her favoritism arose from racial animus, rather than some other difference between the two.

the fact that RadioShack's website referenced no general requirement of a high school diploma or GED for the sales associate position, but did state expressly that such a requirement existed for the position of "Manager in Training." The only evidence RadioShack has proffered regarding its education requirements is from the deposition testimony and declarations of two RadioShack personnel managers. RadioShack offers no written policies and has not sufficiently explained the express statements it has made to the public on this issue.

Defendant argues that its website is not determinative of this issue; it asserts that the absence of an expressly stated requirement does not mean one did not exist. RadioShack's listing of this requirement for managers and not for sales associates, however, cuts against that argument. It is true, moreover, that RadioShack regularly hires people under 17 who do not possess a high school diploma or GED. These facts create an issue of fact for trial regarding RadioShack's actual hiring practices in October 2002 when Overall attempted to apply for a sales associate position.

Despite this conclusion, however, the Court's earlier conclusion that Overall failed to establish that he actually applied for the position is fatal to his disparate impact claim. Because Plaintiff has failed to establish a prima facie claim of disparate treatment, Defendant's motion for summary judgment on that claim must be granted.

**B.     Disparate Impact**

In his R&R, the Magistrate Judge stated that because Plaintiff failed to allege a disparate impact claim in his Complaint and failed to file an amended Complaint, Plaintiff should be barred from raising this claim in his Opposition Brief to Defendant's Motion for Summary Judgment. (R&R at 20.) Plaintiff objected to this finding, but provided no rationale for his objection. After *de novo* review of the averments

of the Complaint, this Court likewise finds that Plaintiff neither explicitly nor impliedly alleges a disparate impact claim in that pleading.

In the three causes of action alleged in the Complaint, Overall only avers that RadioShack refused to accept his application for employment and that RadioShack intentionally discriminated against him by its failure to process his application, giving rise to his second and third claims under 42 U.S.C. § 1983a and R.C. § 4112.02(A), respectively. (Complaint at 2-4.) None of these allegations contains a claim that RadioShack's hiring practices worked a discriminatory impact on Overall and others similarly situated to him.

Although Plaintiff does object to the Magistrate Judge's decision to dismiss his disparate impact claim, nowhere in his Objection does Plaintiff specifically state that he alleged such a claim in the Complaint. Instead, Plaintiff merely restates the same general arguments and objections that appeared in his opposition brief to summary judgment. The Court, therefore, adopts the Magistrate Judge's conclusion that no such claim should be considered in this action.

Even if the Court were to allow Plaintiff to allege his disparate impact claim, moreover the Court also agrees with the Magistrate Judge that Overall has failed to make out a prima facie case of such a claim. To succeed on a claim of disparate impact, a plaintiff must show that a specified employment practice, although neutral on its face, works a disproportionately negative effect on members of a legally protected class. *See Watson*, 487 U.S. at 986-87. The plaintiff must prove that the challenged employment practice, although neutral on its face, has a significant, adverse effect on the protected group to which the plaintiff belongs. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000). When analyzing a claim of racial discrimination of employment practices, the proper comparison must be between the racial

12

composition of the employer's work force and the racial composition of the qualified applicant pool in the relevant labor market. *See Hazelwood School District v. United States*, 433 U.S. 299, 308 (1977).

The Magistrate Judge recounts from previous cases several different formulations of the inquiry. (R&R at 22-25.) As he points out, however, "[a]ll of these formulations...indicate that the proof must include evidence of the racial composition of those actually hired by the employer - the employer's work force." *Id.* at 22. The Magistrate Judge concluded that Overall's offering of hiring "two whites and one black" for temporary positions at the Midway Boulevard store "is not significant enough to support a prima facie showing that the educational requirement had an adverse discriminatory impact on blacks." *Id.* at 25. The Court agrees with the Magistrate Judge's decision. This minute sample of RadioShack's work force cannot fairly represent the Defendant's racial composition in Northeast Ohio or throughout the nation. Plaintiff's failure to cite statistical evidence of RadioShack's work force is fatal to his disparate impact case.

Furthermore, as the Magistrate Judge points out, the record is also devoid of any evidence of the racial composition of RadioShack's "qualified" applicant pool. *Id.* at 26. The Magistrate Judge found that Overall produced only a March 2002 national census,[5] which indicates that 87.9% of non-Hispanic whites age 18 or older had high school diplomas or higher, while only 78.1% of non-Hispanic blacks age 18 or older had high school diplomas or higher. (R&R at 21.) Based on this scintilla of evidence in the record, the Magistrate Judge concluded that this table did not compare RadioShack's employee numbers with those of its qualified applicant pool and, therefore, does not raise an issue of material fact as to RadioShack's hiring practices. *Id.* After *de novo* review of the record, the Court finds no other evidence

---

[5]This memorandum and order also **GRANTS** Plaintiff's Request to Take Judicial Notice of these March 2002 census figures (Doc. 45).

tending to show that RadioShack's hiring practices exact a discriminatory impact on black individuals age 18 or older without a high school diploma or its equivalent.

In his objection to the R&R, Plaintiff alleges that this national statistic operates to disqualify RadioShack's black applicants, such as Overall, "at a substantially higher rate than white applicants," specifically at a rate of 10%. Such a logical leap is inappropriate and in no way dispositive on the issue of disparate impact of RadioShack's hiring practices. At a minimum, Plaintiff's burden is to point to evidence in the record showing that RadioShack's alleged requirement of a high school diploma or its equivalent for employment consideration had a significant, adverse effect on RadioShack's pool of black applicants. Plaintiff has altogether failed to meet that burden.

## IV.    CONCLUSION

Because Plaintiff has not met his burden of establishing that a genuine issue of material fact exists as to his discrimination claims, this Court finds that Defendant is entitled to judgment as a matter of law. This Court, therefore, **GRANTS** Defendant's Motion for Summary Judgment as to all counts. Accordingly, this Court **GRANTS** Defendant's request that this action be dismissed.

In addition, as noted in footnote 5 of this memorandum and order, this court **GRANTS** Plaintiff's Request for Judicial Notice of certain census figures from March, 2002.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE

**Dated:** September 28, 2005